Good morning, Your Honors. Beth Ross appearing on behalf of the plaintiffs. There's a common-sense question presented in this case that has a common-sense answer. The essential question, FedEx Ground is a national leader in the small package delivery business and a competitor to UPS. If you could stay close to the microphone, that would be helpful. Yeah, there we are. So the question in this case is, is it reasonable to conclude that FedEx has outsourced its core business function to thousands of truck drivers and relinquished the control that it needs to maintain the high-quality, uniform, competitive service that it promises to its millions of customers and on which the success of its business depends? And the answer to that question, as a matter of common sense, is no. Plaintiffs here are a certified class of pickup and delivery drivers in California who assert statutory wage and hour claims. They work full-time for FedEx. They drive FedEx-branded trucks. They wear FedEx-branded uniforms. They represent themselves as employees of FedEx to the world. They are the face of the company, and their work is FedEx's business. And they're apparently supposed to carry their key ring on their pinky finger of their non-writing hand. That is a FedEx. That is something the drivers are trained to do in a training that FedEx provides called the Quality Pickup and Delivery Learning Program, and that is a procedure that the managers are trained to observe in something called the Customer Service Ride Training. Now, the district court got the ruling, got its ruling on these cross-motions for summary judgment wrong in every way that matters. It was error for the court to deny plaintiff's motion for summary adjudication in Borrella, California, Supreme Court case that sets forth the modern test that articulates the modern formulation of the common law agency test. And cases find that if the work performed by an employee is integral to the regular business of the company, the worker provides no independent or professional service in relationship to the employer, and the principal retains all necessary control over the business operation that establishes employment as a matter of law. Now, your adversary contends that we should not read everything in Borrella to apply to this case, given that Borrella is a workers' comp case. And there's a fair amount of language in that case in the Supreme Court's opinion that emphasizes the policy is a workers' comp, which, of course, then gives them ground to make the argument they make. How do you respond to that argument? Your Honor, in the Borrella case itself, there is language towards the end of the opinion where the Supreme Court explicitly says the test it announces in the Borrella case is intended to apply to a broad variety of worker protection laws in California, including the wage and hour laws. And the Borrella test has, in fact, been applied by any number of courts in cases just like this arising under asserting wage and hour claims. The Estrada case, which I had the pleasure to try, asserted the exact same claims that are at issue in this case under the California Labor Code. Was Estrada tried or was it summary judgment? The Estrada case was tried, Your Honor. Okay. It was tried for nine weeks. And you think you get summary judgment in this case? Well, there were actually no motions for summary judgment filed in the Estrada case. There was a very compressed timetable, and we all just headed off to trial. But I would point out, Your Honor, that in his statement of decision, Judge Schwab ruled that his order, that his finding, was premised on the operating agreement, the policies and procedures, and the testimony of FedEx's executives and manager, all common evidence. And when we read the statement of decision, we asked ourselves the question, shouldn't we have moved for summary judgment? Now, under Borello, the modern test must be applied with deferences to the purposes of the protective legislation, and there's a policy reason for that. The Supreme Court in cases following it do not want employers to be able to avoid their responsibilities under the law through the artifice of contractual drafting. Now, in this case, the district court acknowledged that the ‑‑ acknowledged the Borello test, and at page 41, at excerpt of record 41, he said explicitly, the coupling of the right to control and integration of the worker into the business does indicate employee status. But despite that finding, that every element of the Borello test was met here, the district court added a new element to the Borello test, which he referred to as the entrepreneurial opportunities that were present in this case, and elevated that new element that appears nowhere in the case law and found it to be dispositive. Excuse me, excuse me. Excuse me. What's the element that appears nowhere in the case law? The element that entrepreneurial opportunity is dispositive and trumps the primary consideration of the right to control. That's in the excerpt of record, Your Honor, at pages 45 to 46 of the district court's opinion. The Borello case itself refutes that argument. In Borello, the share ‑‑ the grower had far less control over the share farmers. It provided them with no supervision. The share farmers were not fully integrated into the company's business. They tended one of many crops. And they had the same kinds of entrepreneurial opportunities that the district court referred to here. The share farmers had the ability to tend one plot of land or to contract with the grower to tend more plots of land. They could hire their own employees, and they, in fact, did so. They hired their family members. And their compensation was based on incentives, based on how much they ‑‑ how much work they were able to do. They could let the plots of land lie fallow and earn nothing. Here, the drivers in FedEx are required to deliver every package every day, every package assigned to them by FedEx. They do not have the ability to take their trucks out of service. They have to do what they're told, when they're told, in order to fulfill FedEx's business obligations. Well, counsel, that may be results. I'd like to get your take on the Merchant's Home Delivery Service case versus the NLRB. And I must admit that when I read this case, I was taken by now Justice, then Judge Kennedy's part of this opinion. But they say, while a balancing of the various indicia of control is somewhat inconclusive, the entrepreneurial characteristics of the owner-operators tip decidedly in favor of independent contractor status. What's your take on this case? Your Honor, in Merchant's Home Delivery, the drivers were delivered appliances for ‑‑ it might have been Sears and, you know, one of those national chains. They worked job to job. They could turn down work if they wanted to. They could hire other employees. They could hire others to drive for them. But the key distinction between Merchant's Home Delivery and this case, there were two. The court in that case found that the work of delivering and installing appliances required a higher degree of skill than the kind of work that the FedEx package delivery drivers perform. Here, the drivers need to have a California driver's license, the ability to drive, and the ability to get along with people. There, the furniture installers had to ‑‑ they provided white glove delivery. There were special kinds of service, special kinds of tasks that they had to perform in order to deliver the furniture in pristine condition. And so that was one key distinction. And the other was that the court in Merchant's Home Delivery found that the entrepreneurial opportunities were hardly dispositive, were inconclusive. The court did not have a clear idea of what those were, and therefore found that the drivers were independent contractors. The facts of that case are quite different than the facts of this case. What about the Silk case on which Merchant's relies? What's your comment on the Silk case? Well, Silk was an old case, again, an NLRI case that decided, I think, in the 1930s. In the Silk case, the facts there, too, are distinguishable, and the employment status test was different. Under the NLRI, the court applies, starting with the Silk case and then later modernized in the Darden case, the court applied a traditional right to control the details test. And the co‑operators in Silk, again, worked job to job. They did not work regular work schedules every day. They could turn down assignments or not. They could show up when they wanted to, and they were paid for the coal that they delivered. So Silk was quite different. The key test in this case, Your Honor, is set forth in Borello as further explicated in factual circumstances similar to those here by this Court's ruling in the Narayan case, a case that is where the facts are on almost all fours with the facts of the FedEx case, and, of course, the Estrada case where the trial court in a ruling affirmed on appeal found that drivers who work under the same operating agreement as in this case, under the same ‑‑ virtually the same policies and procedures, were employees and not independent contractors under the California law test. And if you would indulge me, I would add that under the NLRA, as the Supreme Court said in Darden, the NLRA is neutral as to employee or independent contractor status. Under California law, as set forth in the Borello case, deference must be paid to the purposes of the protective legislation in order to avoid contractual conceits. Well, are you ‑‑ I'm not trying to put words in your mouth. Are you conceding that your request to have summary judgment granted on behalf of your clients is not supported by the record? No, Your Honor, we're not. We believe that summary judgment in favor of the plaintiffs is supported by the record. But at the very least, the district court got it wrong by concluding that these drive that no reasonable jury could find in favor of the plaintiffs in this case as a matter of law. The Estrada case disproves the district court's finding in this case. There, another judge looked at the same facts and drew the exact opposite conclusion. Is the way ‑‑ is one of the ways you want to get out from under Judge Brown's opinion in the D.C. Circuit FedEx case, then, that that applied Federal law of contractor employee distinction and California law is distinct? Yes, Your Honor. The D.C. Circuit's decision in FedEx home delivery is distinguishable on any number of grounds, starting with the fact that the test is different under the NLRA. Secondly, the court in FedEx home delivery decided that case on an entirely different record and made factual findings that are not present in this case, not the least of which was the court there found that the drivers could hire replacements without ever telling FedEx and without the need to obtain permission. There were many facts in the D.C. Circuit's ‑‑ in that case that were described by the dissenting judge that were not considered by the majority. And last, the court there adopted a novel test of employment status focusing on entrepreneurial opportunity that appears nowhere in the California law. Okay. A different question arising out of the somewhat odd procedural posture of this case, given the way we had an MDL procedure. So we have a summary judgment granted to the defendants by the MDL judge, which comes back to California, and Judge Chen just leaves it alone. Now, as I read the red brief, it insists in various ways that you are bound, now that you're back in California, by various, I guess, assumptions or concessions as to what was in front of the MDL judge as we look at the possibility of this case going forward in California. For example, if we were to agree with you that summary judgment was wrongly granted to defendants, what would be the state of the record in front of Judge Chen? Would it be in any respect different with respect to the undisputed facts than it was in front of the MDL judge? No, Your Honor. The state of the record would not be different, except that if we were to have a trial, the record would be more fleshed out. But the MDL court, in certifying the class, found that the case would have to be decided based on common evidence because this is a class action. And that common evidence as we... But it would now be a class action. Is your class action limited to California? Yes, it is, Your Honor. Okay. So it's now a smaller class action than, or at least in contemplation, roughly speaking, than the MDL judge thought he had in front of him. That is to say, he ruled this way consistently across the board with all of these cases. That's right, Your Honor. And that was one of the key errors that the district court made in this case. If you take a close look at the California-specific ruling that the district court entered, in applying the right-to-control test, the traditional factors, the court did no analysis of the California cases as those would bear on this record, and instead adopted its omnibus ruling in the Lee case, which was decided under Kansas law. We think we went under any test, but at the very least, the court was obligated in this case to consider and apply how the factors in the multi-factor test would bear fruit under the California cases, which include any number of cases addressing the status of package delivery drivers. This court's decision in Narayan is on almost all fours with the FedEx case, the Estrada case, air couriers, JKH delivery, all package delivery cases, employee status found in every one of them. What do you do with the ‑‑ I understand you're distinguishing the record in this case from the record in the D.C. FedEx case, but nonetheless, I'd like to hear you address the record in this case with respect to the FedEx driver's ability to hire either substitutes or additional drivers to perform their duties. Okay. I will answer that question. I would like to reserve a few minutes for rebuttal. Okay. In this case, the record shows quite clearly as set forth in Section 2.2 of the operating agreement, and I can get you the page slide if you like, that the ability to hire a replacement driver is conditioned on FedEx's consent and its qualification of those based on its finding as to whether those drivers are qualified or not. And in this case, Dan Sullivan, the CEO of FedEx Ground, testified that FedEx had wide discretion to approve or reject any proposed replacement driver based on such factors as poor grooming. So there is not an unfettered right, Your Honor. But am I understanding it correctly that at least in theory, the FedEx driver has the authority, subject to the FedEx permission, not only to hire a replacement driver, but to hire an additional driver? That's right, Your Honor, but again ‑‑ What do you do with the additional driver? The additional ‑‑ when the ‑‑ if and when a FedEx driver puts another truck on their route, if FedEx permits them to do so and wishes to hire an additional driver to drive that truck, those are rights that the contract confers on the drivers subject to FedEx's control and consent and approval. So FedEx can say yes or FedEx can say no. So what do we have in the record with respect to these additional drivers in California? How many of them are there? Has permission been freely granted? You know, what do we know? Don't worry. You'll get time to rebut. What we know, Your Honor, is that on a nationwide basis, there was no California-specific evidence developed below because the court was examining nationwide evidence. But we know that on a nationwide basis, during the class period between 2000 and 2006, 85 percent of the drivers in the class had a single truck. 3.5 percent had two trucks. And the remainder, a very small remainder, had more trucks than that. So in this case, 85 percent of the drivers were not only similarly situated to the Estrada drivers, but were identically situated to the Estrada drivers. But you're telling me we don't have at the moment, in terms of the summary judgment record, any California-specific evidence on this point? No, Your Honor. That evidence was not developed because in the MDL proceeding, there were 52 cases, and the discovery focused on the nationwide business. Got it. Okay. So you've saved some time, and we'll make sure you get enough time to rebut. Thank you, Your Honors. Good morning, Your Honors. May it please the Court. John Hacker for FedEx Ground Package System. The MDL Court correctly determined that the legal relationship established by the operating agreement is an independent contractor relationship. And I'd like to start right where you started, Judge Fletcher, with the question about the pinky ring. The operating agreement absolutely does not, does not in any respect require drivers to wear to contractors to carry pinky rings or anything because the operating agreement. You know, sometimes there are legal requirements spelled out in great detail in formal documents, and sometimes there are de facto requirements. Right. And that's not a de facto requirement or a legal requirement because the one thing we know is the operating agreement. Is there any strong encouragement? No. There's none. Oh, you mean if I'm a FedEx driver and I don't ever, ever want to carry my ring, my key on my pinky finger, I can just thumb my nose at the manager? There is zero evidence that that is a requirement, that there's any pressure on that. In this record, there's none because the operating agreement doesn't require any Okay, you just lost me. Because you're telling me there is zero evidence to that effect. I see some evidence there, and then you immediately go back to the operating agreement. I'm not talking about the operating agreement. There is evidence that it is part of the training, and there is evidence that renewals are, in part, dependent upon the satisfaction that the FedEx managers have with the drivers. So you can't say there's zero evidence. You can say that the compulsion isn't strong enough, da-da-da-da-da, but please don't overstate. Well, and I don't mean to overstate. What I do mean to say is that there's no evidence, and the evidence matters here because, remember, the plaintiffs chose to put on a case that's only about the operating agreement, the policies and procedures that inform the legal rights under the operating agreement. That's the issue here. And the problem the plaintiffs have is that you can't draw any inferences because we have no idea, literally none whatsoever, whether and how and to what extent it is true that, as plaintiffs argue, there is this implicit pressure to, you know, wear the keys on a particular pinky ring or anything. There's nothing like that in the operating agreement, and there's no reason to infer, I think, from that. Is there anything in the operating agreement that requires good grooming? Well, there's the basic standards of grooming and appearance, yes. So what's the operating agreement say with respect to grooming? It requires basic, you know, acceptable appearance standards, professional appearance standards. And is there anything in the operating agreement with respect to other details that apparently the FedEx drivers comply with? Well, remember, contractors don't have to drive at all. So the operating agreement only governs contractors. So there's none of this applies at all to contractors. The second sentence of the agreement distinguishes between the person or entity who signs the contract and agrees to be a contractor and to fulfill the obligations under the agreement, which are to arrange and be qualified operators. Yeah, yeah, I understand that. But the whole dispute here is whether or not we look solely to the operating agreement, which you look at it on its face, characterizes these people as independent contractors, which is, of course, the position you take and wish us to adopt. But that's not the end of the story, because very often in these cases we'll find that the formal documents characterize the employees or workers, I should say, in such a way. And then we've got to decide, well, is that the reality? So merely pointing to the piece of paper doesn't resolve the case. I appreciate that, but the plaintiffs made a choice. They could try a different kind of case, because I don't disagree. Under California law, as under Oregon law, the contract is controlling unless the conduct is shown to be to the contrary. That's the fundamental principle in both states. And the plaintiffs chose not to put on the kind of case where an individual comes in and says, here's what the agreement provides, here's the rights and obligations under the agreement. But, in fact, on a day-to-day basis, my experience is different. The terminal manager does require me, and he threatens me all the time, and I feel this economic and disciplinary pressure to behave a particular way. The plaintiffs could put that case on, and plaintiffs have put that kind of case on. But that's not this case, Your Honor. This case, Your Honor, in order to obtain class certification, the plaintiffs made a deal, a bargain, and that bargain was that they would not put on that kind of evidence of the actual conduct, an individualized evidence of individual contractor experiences. Well, that may be with respect to their argument that they were entitled to summary judgment themselves. But tell me more about this, quote, deal. I mean, it strikes me as odd that in making a motion for summary judgment at the MDL court, based upon evidence that is sort of nationwide and uniform, that I have trouble understanding how that, quote, deal affects us now, now that we're back to the originating court. Right. What do we do when we know that, in fact, the evidence with respect to California may be a little bit different, may come in differently, and when the question is not merely whether they're entitled to summary judgment, but whether you are entitled to summary judgment? It's such an important question, Judge Fletcher. It's not about summary judgment. It's about class certification, which was a California-based. The deal the plaintiffs struck was in order to obtain a California class, not a nationwide class, a California class of drivers, they said they would limit their proof to the operating agreement and policies and procedures that inform the rights under the operating agreement. And then they later introduced some other evidence that was purely class-wide, which was basically, you know, testimony from FedEx executives that, again, informed the understanding of the rights and obligations under the operating agreement. Counsel, where on the record can I go to read this deal? I don't have the citation handy. The district court opinion refers to it on a number of occasions and cites the essence of the district court's analysis. That's why repeatedly, both in the original opinion and then in the California and the omnibus opinion, it repeatedly explains why the analysis is limited to this documentary class-wide record. It's a class certification. That's why Ms. Ross is incorrect when she says if and when there's a trial in place. Well, if you can't give me a place in the ER, tell me exactly how this deal came about. I mean, is there a document in the record that says we agree to the following? Yes. Yes. That was the dispute over class certification. When they moved for class certification, that actually- Let me interrupt. You're talking awfully fast. I apologize. So there is somewhere in the record a formal piece of paper that says here's the contract, here's the, quote, deal? Yes. But you can't tell me where it is in the ER right now? I can get it for you in a moment. My colleague will hand it to me. I'd like to see it. Sure. So the district court opinion ER number 6, ER 6, and again, this is repeated district court opinion, says the drivers have known, at least since this Court's first order granting class certification, that the scope of evidence would, under the approach taken by the drivers, be limited to the operating agreement and generally applicable policies and procedures. And there's a citation there. That's at ER 6. And then it goes on to explain exactly what happened. How it arose was that the plaintiffs sought class certification. You're sliding past this awfully fast. You've just pointed me to the district court's order. I asked, or I think Judge Trott asked you, where's the deal itself? I understand. And there's a citation there to the opinion order, March 25, 2008, document number 1119. But that sounds like an opinion and order from the district court. That, again, doesn't sound like a deal entered into by the parties. I understand.  But if I can just explain how it arose. There's no complication here. There's not any really dispute on this. What happened is the plaintiffs moved for class certification. FedEx Ground responded and said, you can't establish on a class-wide basis that each of these individual contractors is an employee, because you have to know, under the California rule that says the contract governs unless the conduct is to the contrary, you can't establish that because you have to know the individualized circumstances. The plaintiffs responded and said, we're not going to put on that case. We're going to rely on class-wide documentary evidence. And the court accepted that, and then repeated throughout the proceeding below, there's a whole exchange of evidence on this. The plaintiffs tried to put in anecdotal, individualized evidence. The court said. Did they state that orally? Did they file a document to that effect? There were documents to that effect in the exchange on whether or not a class could be certified. That was the nature of the exchange. And that's what the court was for. And whoever you keep pointing to, to your right, hasn't yet found it in the ER. That's correct. But we will definitely find it either right now or this afternoon. Okay. Let me ask you this. Assume for the moment that we were to conclude that summary judgment was incorrectly granted to your client, and that further, we're not going to grant summary judgment to the plaintiffs either. So it goes back to Judge Chen. Is Judge Chen bound in any way by any deal in the district, in the MDL court, either as to the certification of the class, now that it's back in California, or as the evidence relevant to the certification of the class? Or can Judge Chen do, as a district judge ordinarily can do, as the evidence goes forward, the class, the case develops, recertify, decertify, rearrange? I mean, what's the effect, if any, on Judge Chen of the deal if we were to hold that summary judgment was wrongly granted to you? That goes to our conditional cross-appeal. I do think it's true that Judge Chen would have the authority, but would also have the duty, to revisit the class certification order if the plaintiffs decided to change their approach to litigation and introduce the kind of evidence that Judge Miller said, and that they said they would not introduce in order to obtain class certification. If we're going to go forward and have a trial, and I wanted to say this earlier, Ms. Ross said the trial would involve more evidence, evidence to be fleshed out at trial. In the current state of the record, that's not correct, because the evidence was constrained by the class certification order. If there's going to be more evidence. And that's the difference between this case and Estrada, for example, you would argue? Yes. Yes, exactly. I mean, there's lots of individualized evidence in the Estrada case that Judge Miller said he was not going to allow because of, in order to obtain the class certification. That was a premise of class certification. Again, given what the plaintiffs said, in order to obtain class certification, that was their choice. And we will get you a citation for their statement in the class certification proceeding. But just to be clear, here's what I think I heard you say, and that is to say if we were to hold that Judge Miller, the MDL judge, incorrectly granted summary judgments to your client, summary judgment to your client, and we don't grant summary judgment to the plaintiffs. So we just send it back to Judge Chen and say there's no summary judgment either direction. Judge Chen is not bound by any deal made in front of Judge Miller. Judge Chen can recertify the class, recharacterize the class, look at whatever evidence he thinks is relevant to whatever class he thinks is appropriately certified. Can I just quibble with one point on that? Please, yes. That's why I'm after this. Yeah. Which is so long as the class certification order remains in place and isn't revisited, I think he is bound because that was the premise of the class certification order. To the extent Judge Chen believes it's appropriate to permit the plaintiffs to introduce new and different evidence, I think he would be duty bound to revisit the class certification order and entertain FedEx Grounds arguments. Okay. But I think this is consistent with what you're saying, but I want to be clear. But it's possible that Judge Chen could look at the class that's certified, look at what he thinks is properly now in front of him with respect to this being a California class, and based on what he has in front of him, continue the certification that previously existed, but he's now justified it on ground that he thinks are appropriate. Would that be possible? Well, theoretically possible. But if he's going to follow the example of Narayan, I think he would be compelled as a matter of law to decertify the class. But that would be an argument, a litigation that we have. But that's up to him. That would be, yes. He has the authority, if you will. Okay. I got it. Okay. Right. And so my only point, just to be absolutely clear, is that to the extent the court is persuaded that there could be additional evidence of conduct out there, individualized evidence, I think Judge Chen would be required to revisit the class certification. And, of course, our position would be there would be no basis for class certification under Wal-Mart and Ellis and cases decided since the prior certification. But I do want to urge the Court. I understand the Court's position. I accept that, as things currently stand, there seems to be an inclination to order a new trial. But I just want the Court to ---- I'm speaking only for myself. Fair enough. And only in hypothetical terms. We have not conferred prior to coming on the bench. And I absolutely accept that. And I just want to encourage the Court to think through the case in terms of the record that is presently before it, the choice plaintiffs made to litigate the case in a particular way. And given those underlying historical facts, which are not disputed, there's no dispute of fact, of historical fact, as to what is ---- what the rights and obligations under the agreement are. There's only the question as to whether those undisputed rights and obligations establish an independent contractor relationship or an employee relationship. And if you apply the California test, I think it's quite clear that summary judgment was appropriate. I want to start with a point on the presumption. The only thing Borello says with respect to a presumption is that it applies under the workers' compensation law. And other courts have said the same thing. We don't quarrel with that point. To the extent Borello says generally we adopt a general test, we accept the point that the Borello test can govern any inquiry under the right to control test, because Borello simply sets forth a multitude of factors that subsequent courts have also applied under 2802 and other cases. So if you're referring to the Borello test, and by that you mean the multi-factor analysis, then we don't quarrel with that. We only quarrel with the proposition that there's a presumption applicable outside the places where the legislature has decided that there ought to be a presumption as a matter of public policy. Now, this is a fairly abstract question, and I realize there's some difficulties with abstract questions. Do you quarrel with your adversary's contention that California law on the distinction between employee and independent contractor leans more towards characterizing workers as employees than, for example, Federal law under the NLRA? I do quarrel with that, because I think that's — So you think the law is identical? Well, it may be different in certain particulars. It depends on the case you're looking at. But it is identical on the point that it's — there's no presumption either way. No, but that was not — I did not confine my question to presumption. I asked is the law more favorable to characterizing a relationship as an employee relationship in California law than it is under the NLRA. And I think the answer is no, and by that I just simply meant to say there's no thumb on the scale even under California law outside the workers' compensation context and outside the context of licensed building contractors, which the legislature has said ought to be a presumption. There's no basis in other contexts for saying that we're going to sort of favor the idea that it's employee. Okay. Now, do you mean that the FedEx law as articulated by Judge Brown in the D.C. Circuit is also California law? I would say it's not inconsistent with California law, because she's applying a gloss, I would put it, on the right to control factors. And I think what you see in California law — You're weaseling on me just a little bit. Are you saying that the law as articulated by Judge Brown on the D.C. Circuit in the FedEx case is the same on the relevant points as the California law? She applies the same factors, yes. She has more emphasis on entrepreneurial opportunity. I was going to say the entrepreneurial opportunity that she emphasizes does not seem to me reflected in California law in the same way. Right. I mean, whether it's in the same way, I don't know. That's such a subjective sort of impressionistic, depending on the case-by-case analysis. I would say, if you look at the Beaumont-Jacques case, what Beaumont-Jacques says is when you're applying the factors — that's why I say it's a gloss, if you will — when you're applying the factors, what you're looking for is whether or not the contractor can exercise meaningful discretion. Exercise meaningful discretion, quote, unquote. That's what Beaumont-Jacques says is the way you're — what you're getting at when you apply the multiple right to control factors. Who has control over what they do on a day-to-day basis? Is it the principal or is it the service provider? Counsel, if I can interrupt your delivery, the other side relies on Borrello, Estrada, and Narayan sort of as a trifecta of cases that move in their direction. Which cases do you rely on? Which of the three cases do you want me to read, for example, before I make a decision in this case? Well, I would point the court in the direction of the Beaumont-Jacques case I just mentioned. I think Millsap against FedEx is a very useful case. They're useful in different ways. I would say the Mission Insurance case is another good one. And then I would point the court — Merchants — do you rely on Merchants Home at all? Absolutely. That's — among the cases I would rely on, for sure, because although that arises under Federal law, it applies the same multi-factor test the court applies in the Borrello case. So I don't think there's anything inconsistent in that respect between that version of Federal law and Borrello. It's just both multi-factor tests. And the district court below I think was correct to say the right way to look at this kind of issue is not to look at one case or another and just compare it and see, you know, how many facts were on point between the two cases, but rather to apply the facts on a case-by-case basis — excuse me, apply the factors on a case-by-case basis and draw a legal conclusion about what do those factors tell you the legal relationship is based on undisputed underlying facts. The facts here, again, applying the Borrello factors, establish that the relationship is an independent contractor relationship. The most important one is the right to control. And there absolutely is no right to control under the operating agreement, most fundamentally because there's no personal service required. Contractors don't even have to have a driver's license. There's absolutely no requirement that anybody ever show up to work under the agreement that governs this relationship. They do — they can determine their own start and end times, when they take breaks, what routes they drive. FedEx ground is limited to a maximum. Wait a minute. You say they can determine their own start time. If I were a worker employed under this — working under this agreement, I just want to stay away from a contractor. I could start — I could pick up packages at 1 in the morning? The only limitation is that the absolute outer bounds is, of course, the sort has to be completed. There's no question of that. But you absolutely do not have to show up at 7, 8, 9, 10. You can decide when you want to start your day. But I have to deliver all the packages that are mined for the day? That's correct. That's the result. And so what constraints are imposed on me by that necessity? That is to say, I understand the routes take a little more than eight hours. And I understand that I can pick them up only at certain times and finish at certain times. So you say they can do any time they want? That can't be right. Well, there's — it's very broad range. And FedEx ground cannot tell somebody to, you know, leave by 8, be back by noon, take breaks at a particular time. There's this beginning of the day and the end of the day. Within that very broad range, it is absolutely within the contractor's discretion. When can the day begin? Assuming I'm an early riser, want to pick up the packages and get started, you know, I get up at 5 in the morning. So can I do that? Sure, sure. As long as the sort is completed. And the packages will be there for me to pick up and start delivering? It might depend on the terminal as to what time the sort is completed. But as long as the packages are there to be delivered, which is the result, you obviously can't deliver packages that aren't ready to go. And can I start ringing on doorbells at 6 in the morning? Well, for businesses, you know, as long as the business is open, you can deliver them to the businesses. I assume that FedEx would be unhappy if I started delivering packages to residents at 6 in the morning. Right. I mean, that's a fair point, but FedEx doesn't. I assume that I will not be employed or not be working very long for FedEx if I start delivering packages at 6 in the morning. It depends on the circumstance, but I don't disagree. My point is only that FedEx Ground can't say to somebody, you know, deliver at 10 o'clock or 11 o'clock or start your day at that time. I mean, it's obviously the people or the businesses to whom you're being delivered have to be open and available. But that's not a constraint even FedEx Ground imposes. That's the result that's being performed by the contractor. Okay. Now, if I can just say one more point on the supervision, which I think is such an important element of the right-to-control test, as Judge Goodwin pointed out in decisions for the Oregon Supreme Court, which, again, are applying at least as to this factor, the same factor. FedEx Ground does not have the kind of right of supervision you would expect of any employer over its employees. They are prohibited from supervising any more than 2 percent of the time, of the work time, of contractors in a given year. There's no employer who employs employees who relinquishes that kind of supervisory oversight. They simply can't do it, which I think is a key indicator of the fact that as a matter of law. What happens when a customer complains? What do you mean? The customer would complain to FedEx Ground, and then it depends on what the complaint would be. But I'm assuming that as soon as a customer complaint comes in, the supervisor gets involved. Again, it depends on the complaint. If the complaint is the packages weren't delivered, that's a service failure. If the complaint is, you know, I didn't like his appearance, then there would be a discussion, but that would not be a basis for, depending on the nature of the appearance and whether the manager. What I'm obviously after is you're saying that they do these ride-arounds, I think, four times a year, and you're saying, well, they supervise only this very little bit. But I'm also saying that if a complaint comes in about performance by a driver, the supervisor is not going to blow it off and pretend it didn't come in. Well, right. But, of course, the cases are legion that say the principal has the right to ensure that the results are being delivered. And if the results are not satisfactory to the customers, then there's no case that says you can't ensure that the results are being performed. Okay. Thank you. Thank you very much. Response? Let's put three minutes on the clock and see what happens. Okay. I think I can do that. Maybe three and a half. Okay. Okay. First, to answer your question, with respect to the deal. Let me go to ER-5. In their supplemental briefs, the drivers have complained at times that the court refused, close quotes, to consider extrinsic evidence of FedEx actual conduct towards them. The case's procedural, case's plural, procedural posture limits the court to considering evidence truly common across the nation, the operating agreement and generally applicable policies and procedures. Is that right? That's right, Your Honor. And then there were further statements by the court. So if I could direct your attention to the appellant's supplemental excerpt of record, item at page one. The district court asked the plaintiffs, during the class certification proceedings, to identify for it the types of evidence the plaintiffs expected to present at trial. And there was a list of, I had it in my hands and now it's not in my hands, but I'll tell you from memory. There is a list at page one and two and three, I guess, of that supplemental excerpt of record. It was a statement of intent that we filed saying that we intended to put before the court common evidence, including the operating agreement, policies and procedures, manager training, driver training, and so on. And we most certainly, because this is a class action, represented to the court that our case would be based on common evidence, not the evidence, not any testimony of individual drivers about their individual experiences, how it worked for them, but maybe not others. And I will point out that the trial court in Estrada also did not consider such evidence, although there were drivers who testified. Yeah, well, I'm reading footnote four, but I also see that the MDL accused you of a flip-flop saying one thing for the class certification and then trying to change horses in midstream when it got to the case. Well, Your Honor, I think he was talking about something slightly different, and I don't have the, I can grab the district court's opinion. But if I could finish. Footnote five, the court chronicles one example of the plaintiff's flip-flop on their approach to the scope of evidence in today's Louisiana decision. So, I mean, is this true that you agreed to have it narrowly confined to the four corners of the operating agreement and generally applicable policies across the state, and then you tried to move in with extreme evidence based on what was actually happening here and there? No, Your Honor. The district court described the type of evidence the plaintiffs could present in a number of different places in several very long opinions. I would also direct the Court to there was the statement of intent that we filed in the supplemental excerpt of record at page 8. Is that the deal? Is that the deal, the deal, the deal? So the deal, what we told the Court we would present. Wait, wait, wait. That's in supplemental excerpts of record page 8? The supplemental excerpt of records is the Court's order in response, you know, construing the evidence that the plaintiffs offered to present, which was set forth in supplemental of excerpt, supplemental excerpt of record 1. FedEx objected and said the plaintiffs are, you know, going, the plaintiffs' intent, Your Honor, is to present individualized proof. And in the Court's order that starts at SCR page 8, the Court said no. The Court did not read the plaintiff's statement of intent with respect to the agreement, the policies, the manager training, the driver training to, as an intention to present anything but common proof. Then in the Court's, in the district court's order. Well, wait. Common proof. Common proof. That means something. The policies and procedures, the operating agreement, the common manager training with respect to implementation. Frankly, Counsel, I hear you trying to slide out from under something that you agreed to going into this case. In the district court opinion, the parts that I read seem to suggest that the district court agreed. The Court called it a flip-flop and said, wait a minute, extrinsic evidence is something different. You agreed to this, and that's the way the case is going to be decided. What am I missing? You're missing, Your Honor, with all respect, at page, in the excerpt of record at page 231, which was the district court's opinion. In ruling on FedEx's motion to strike various evidence that FedEx claimed was not, was individualized, the district court said the following. And this appears at page 10 of our brief, and you can take a look at the excerpt of record at 231. The Court rejected FedEx's claim that the evidence, that the types of evidence presented were inherently individualized and explained that the Court would consider the submitted evidence, and now I'm going to quote, to see generally how FedEx implemented its policies and procedures on a class-wide basis. For example, what forms managers used to evaluate drivers' work methods, the information managers were expected to input, the information FedEx tracked for all drivers, and the general topics addressed between managers and drivers. The Court admitted the evidence presented at summary judgment that went beyond the words of the operating agreement and the, and the, and the FedEx, you know, the FedEx manual setting forth the policies and procedures, and admitted various forms, not for how they were filled out, but the forms the managers are required to fill out documenting the driver's work performance. The Court admitted evidence demonstrating the types of information that the managers are expected to input into those forms, the way that documents that show the type of information FedEx was expected to track for all drivers. The evidence that was used to track for all drivers. To go back to that, to go back to that paragraph, it says, the Court grants FedEx motion to strike to the extent the plaintiffs rely on the submitted documents to show individual contractors' experiences in class certification cases. So it goes, all right, I understand your point. Well, and that's correct, Your Honor. And the plaintiffs did not offer any individualized evidence either to the district court, and we don't rely on any individualized evidence in support of our appeal here. So I'd also like to address, in rebuttal, I'm really close, I may be over my time. Say what you need to say. Okay. The arguments that the plaintiffs have, you know, free reign to decide when they start and when they end work. Mr. Hacker was exactly right. The drivers can't leave the terminal in the morning until the packages are all sorted. And there is also a FedEx policy, which I'm sorry I don't have the pin site, but it's in the policies and it's cited in our brief, that require the managers to inspect the drivers to see whether on a daily basis and to fill out a form that shows that the driver's personal appearance meets the standard, that their truck meets the standard, and that the managers are authorized to send the drivers home if they show up out of uniform or with a dirty truck. There is also evidence in this record, testimony of the CEO, Mr. Sullivan, that the FedEx ground drivers have to come back at the end of the day by the cut time in order to bring back packages so they can move along to the next place on the delivery chain to get on the airplanes to go to another state and so forth. With respect to the cases, Judge Tribe, that you asked Mr. Hacker what cases they would rely on, I'd point out that the Beaumont-Jacques case, which is a recent case, involved a district manager for an insurance agency, and the court there did not actually recite the Borrello case, but actually relied on an older decision called McDonald that was decided in 1955 that applied a different standard. The standard in that case was complete control, not the right to exercise all necessary control. The Millsap case is entirely distinguishable as is mission insurance. Those cases were distinguished by the district court of appeal in Estrada, and they were distinguished by the California courts of appeal in JKH and Air Couriers. The Millsap driver drove in his own truck, worked job to job. He showed up, and they gave him packages or not. He invoiced the company for his work, and he was not required to provide real-time package scanning to show the company where every package was, you know, along the day, along the way. All he had to do was let the company know at the end of the day that the packages had been delivered. Okay. Are you prepared to wrap up here? I'm prepared to wrap up, Your Honor. It's our view that this is a highly organized national company and that the suggestion that a reasonable jury could find that these drivers were anything but employees doesn't make sense, and the court should overturn the summary judgment orders. Okay. Thank both sides. Alexander v. FedEx Ground Package System, submitted for decision.
judges: Goodwin, Trott, Fletcher